## FRIEDMAN'S ESTATE v. ARMOND.
### No. 5016.

Court of Appeal of Louisiana. Second Circuit.

Nov. 6, 1935.

S. R. Thomas, of Natchitoches, for appellant.

John G. Gibbs, of Natchitoches, for appellee.

DREW, Judge.

Plaintiff sold to J. E. Armond 80 acres of land for the agreed price of $1,600, evidenced by six promissory notes; one for $600, and five for $200, each. The last five notes were due, respectively, on December 15, 1930, 1931, 1932, 1933, and 1934. The first note for $600 was paid. All the notes were paraphed "Ne Varietur" to identify them with the act of sale and the vendor's lien and mortgage, and were delivered to the vendor. The act of sale and special mortgage waived all preliminary notice, time, and delay, and carried confession of judgment, and agreed that executory process might issue thereon for failure to pay at maturity.

The mortgage debtor having become delinquent in the payment of said notes, plaintiff issued executory process for the collection of the five $200 notes. The 80 acres of land covered by said act of sale and mortgage were seized and duly advertised for sale. Thereafter, defendant Armond came into court by petition and prayed for a temporary restraining order and injunction enjoining and restraining the said sale. He alleged that prior to the issuance of the executory process, by agreement with the agent and representative of the plaintiff's succession, he executed a notarial deed to said estate by which he retransferred to it 60 acres of the 80 acres originally purchased, for and in consideration of the cancellation of the five $200 notes; that said deed was duly recorded in the conveyance records of Natchitoches parish; and that he therefore had no interest in the said 60 acres reconveyed to plaintiff, and that the remaining 20 acres he owned free of any in-

*Rehearing denied Dec. 13, 1935.

cumbrances, by virtue of the retransfer of the 60 acres.

Defendant further alleged that plaintiff was not the owner of the five notes it was attempting to execute upon, and same should be delivered to the clerk of court and ex officio recorder of mortgages for cancellation. He further alleged that on a later date and after the retransfer had been placed of record, by agreement with the agent and representative of the succession, the said agent or representative appeared at the clerk's office and ratified said transfer by signing the notarial act of transfer made by him to the plaintiff's succession; that plaintiff took possession of the 60 acres of land, and at a later date had his signature erased from said deed and public record, which was in fraud of petitioner's rights.

Defendant further pleaded estoppel, based upon the above allegations, and asked for $200 as attorney's fees.

A temporary restraining order was issued and plaintiff ordered to show cause on a day fixed by the court why a preliminary injunction should not issue.

The plaintiff's succession, through its agent, J. I. Friedman, answered the petition for injunction and denied the material allegations made therein; and further answered as follows:

"13. Now, further answering, your respondent shows that he is sole agent of the Estate of Mrs. C. Friedman; that no one else has authority to bind in any way the Estate of Mrs. C. Friedman to the knowledge of Armond and the public generally. That no one else has authority to represent him or the Estate of Mrs. C. Friedman.

"14. That in 1929, respondent sold to Armond 80 acres of land in question, as shown by the sale and the terms thereof, and finding he was unable to carry out his agreement and pay for the land, Armond applied and appealed to respondent to take back the land and sell him 20 acres thereof for the price of $200.00, $50.00 payable in the fall of 1933, and the balance annually thereafter.

"Respondent consented thereto and held himself ready to comply with his agreement, and then he would sell him 20 acres on the terms stated.

"The matter dragged, Armond failed to ask for a deed and to execute the deed of retrocession thereof until lately, and to execute the sale of the 20 acres, as agent.

"It was further agreed that Armond would come to the Clerk's office and execute the retrocession deed of the 80 acres and at the same time respondent would execute a deed to him to 20 acres on the terms agreed. Failing to do so, respondent needed his money evidenced by the five notes of $200.00 each, due by Armond; he employed counsel to foreclose on the mortgage and vendor's lien.

"Armond then said he would come up and do that at once. Respondent told him to come on and that he would 'phone the Clerk that he was unable to come; to perfect the contract by the two deeds and Armond to execute both deeds and he would come up and sign them as soon as he was able.

"This was done by Armond, who executed the two deeds and was supposed to leave them as instructed with the Clerk until such time as respondent could come and sign both of them.

"The Clerk or his deputies failed to carry out such instructions. He took the deed, so called retrocession, and recorded it unsigned by respondent, with the five notes secured by mortgage uncancelled. When respondent did call, the Clerk had already recorded the so-called retrocession, which was incomplete because it was unsigned by respondent and the mortgage notes, five in number, were not cancelled. When respondent went to the Clerk's office, the Clerk or his deputies turned to the recorded sale and asked respondent to sign it which without thinking and without reading it, respondent did sign it, presuming that it was in accord with the instructions he had given. Immediately after signing it, he read it and told the Clerk:

" 'This is not what I instructed at all.'

"The deputy clerk erased his name from that book and plaintiff in injunction has no title whatever to any part of that land.

"Respondent asked the Clerk, or his deputies, at that time whether or not he had recorded also the sale of the 20 acres to Armond for $200.00, in accordance with the agreement. The Clerk or his deputies said that he had given that sale back to Armond, who said that he would get the respondent to sign it and the notes would be paraphed and delivered in accordance with that sale. The Clerk or his deputies had no right or authority in the world to record the said so-called retrocession deed, without recording the sale of the 20 acres

"Respondent then executed his notes by obtaining a writ of seizure and sale and seizing the entire 80 acres.

"A short time before respondent executed the notes, Armond called on respondent and asked him to sign the deed selling him the property, 20 acres; respondent advised him that he could not do that, but had to go up to the Clerk's office and sign both, accepting the retrocession of the entire 80 acres, because he could not sell him the 20 acres unless he had retroceded the whole 80 acres; and Armond has never called on respondent or has executed said deed.

"The act of signing by respondent, the original retrocession of only 60 acres and his erasing the same, was one single transaction done at one time. His only error and fault were not reading it before he signed it, but immediately upon reading it found that it was erroneous and wrong and that he had no title to the 20 acres of land if he did, and he erased his name therefrom.

"The deputy clerk who was in charge of the particular recording, made no objection to the erasure of his signature.

"The seizure under the foreclosure proceeding which issued on December 18, 1933, was advertised for sale publicly, the sale to be made on Wednesday, February 21, 1934, and at no time during that advertisement did Armond discuss the matter or ask to change it or carry out the agreement, until on February 14, 1934, when he filed his application for injunction.

"Respondent is perfectly willing to carry out that original agreement; first he wants a title by retrocession to the 80 acres, so he can sell 20 acres thereof to Armond on the terms agreed, and is willing to carry that out now, or within the next 15 days, at no cost to himself, but he is not willing to allow an injunction to be issued against him under the real facts, as stated.

"That he is not at fault in the matter, but owing entirely to the failure of the Clerk and of Armond to carry out his agreement, first to retrocede the land in full, 80 acres, and to cancel the five notes respondent holds against him, and then to sell him the 20 acres on the terms agreed.

"A witness to the entire proceedings is W. E. Page, who represented both parties who instructed the Clerk in accordance with the allegations."

■ Plaintiff in injunction then filed a plea of estoppel, based upon the allegations in the answer, alleging the answer admitted signing the deed accepting the 60 acres, and is therefore estopped to deny or disclaim the terms and effect thereof.

At the beginning of the trial of the case, the plea of estoppel was taken under advisement by the court.

The purported deed from plaintiff in injunction to the defendant, retransferring the 60 acres, was offered in evidence by the plaintiff, some testimony as to the value of services rendered by the attorney, and plaintiff rested.

Defendant in injunction then placed upon the stand the agent and representative of the plaintiff succession, who testified that he erased his name from the deed before the ink "got cold." We take it that he meant before the ink was dry. He was not allowed to testify further; the lower court holding that the mere fact that he signed the deed, and, apparently before releasing it, discovered he was in error as to the contents, erased his signature, constituted the execution of the deed and thereby estopped him from denying or explaining in any manner his act.

■ We are of the opinion the lower court was in error in so holding. The mere signing of an instrument and erasing the signature before delivery does not constitute the execution of the instrument so as to be binding.

Defendant likewise placed upon the witness stand the plaintiff in injunction, and, when questioned regarding the deed and the agreement, counsel for plaintiff objected and the objection was sustained, barring any testimony from the plaintiff. The numerous objections made, all of which were to the same effect, should have been overruled and the testimony heard, especially so since defendant in injunction alleged error.

The plea of estoppel, under the pleadings and the meager evidence in the record, is not good. However, it may be after a full hearing of the testimony. Under the circumstances, the case will have to be remanded to be tried in accordance with the views expressed herein; and it is so ordered. Costs of appeal to be paid by the appellee; all other costs to abide final determination of the case.